**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

| | | |
|---|---|---|
| BRYANT D. BARNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-34-AZ |
| | ) | |
| FRANK BISIGNANO,<br>Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Bryan D. Barnett's appeal of the Commissioner of the Social Security Administration's (the "Commissioner") denial of disability benefits.[1] Barnett argues that the Administrative Law Judge ("ALJ") committed error by failing to adequately consider X-ray imaging evidence and his vein-related treatment when ruling on his application for benefits. For the reasons discussed, the Court disagrees with Barnett's arguments and finds no reversible error by the ALJ. Accordingly, the Court will affirm the ALJ's written decision.

**Background**

Plaintiff Bryan D. Barnett filed an application for disability and supplemental security income on July 15, 2025. A.R. 18.[2] He was 39 years old when he allegedly

---

[1] On July 22, 2025, the parties consented to the jurisdiction of the assigned Magistrate Judge for all purposes pursuant to 28 U.S.C. 636(c). *See* DE 12.

[2] Citations to the Administrative Record, filed at DE 8, are throughout as "A.R."

became disabled. A.R. 26. He previously completed high school through the 10th grade and had past relevant work experience as a welder and retail laborer. *Id.* at 63.

Barnett applied for benefits claiming a disability onset date of March 7, 2020. *Id.* at 18. His claims were denied in his initial application and upon reconsideration, and Barnett requested a hearing before an ALJ. *Id.* On August 11, 2023, the ALJ held a hearing at which Barnett was represented by an attorney and a Vocational Expert ("VE") testified. *Id.* On May 22, 2024, the ALJ issued a written decision denying benefits. A.R. 18-28. Plaintiff timely appealed to the Appeals Counsel, and the Appeals Counsel denied Plaintiff's Request for Review. A.R. 2. Plaintiff filed a complaint for District Court review. *See* DE 1. Because the Appeals Council denied review, the ALJ's written decision is the final decision for review by the Court. *See* 20 C.F.R. §§ 404.981, 416.1481. In that written decision, the ALJ followed the standard five-step process to determine whether Barnett was disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. A.R. 20. At step two, the ALJ found Plaintiff had the following severe impairments: chronic venous insufficiency, bilateral foot osteoarthritis, obesity, and chronic sinusitis with headaches. A.R. 21. The ALJ further found that Plaintiff had the following "non-severe" impairments: high cholesterol, hypertension, gastroesophageal reflex disease (GERD), a cervical tiny disc protrusion, and affective/anxiety disorder. *Id.*

The ALJ next considered whether Plaintiff's documented severe impairments met or equaled any of the applicable listings. The ALJ determined Plaintiff's impairments did not meet any listing and that the combination of his impairments did not meet or equal any applicable listing because he did not have a documented medical need that satisfied all of requirements of any of these listings. *Id.* at 21-22.

Having found Plaintiff was not presumptively disabled based on any applicable listing, the ALJ moved on to assess his Residual Functional Capacity (RFC). The ALJ found he had the capacity:

> to perform sedentary work … except the claimant can never climb ladders, ropes or scaffolds. The claimant can occasionally climb ramps and stairs, balance, stop, kneel, crouch, and/or crawl. [He] can tolerate occasional concentrated exposure to environmental hazards such as high exposed places and moving mechanical parts. [He] requires the ability to shift positions between sitting and standing that [he] can stand for 5 minutes after sitting for 20 minutes while remaining on task while doing so. Lastly, [he] is limited to understanding, remembering, and carrying out simple instructions, to account for [his] pain.

A.R. 22-23. "Sedentary work" is defined as work where an individual has the ability to lift/carry 10 pounds occasionally, stand and/or walk for up to 2 hours in an 8-hour work period, and sit for up to 6 hours in an 8-hour work period. *Id.* at 22, n.2

The ALJ then recounted the testimony and evidence from Plaintiff's medical history that supported or factored into the RFC. While the ALJ recognized that Plaintiff's "medically determinable impairments could reasonably be expected to cause alleged symptoms," his statements concerning "the intensity, persistence and limiting effects of these symptoms" were not consistent with the medical and other evidence, which showed less intensity, persistence and limiting effects. A.R. 24. The

ALJ reviewed and catalogued the medical record evidence from Plaintiff's alleged onset date of March 2020 through the time of the hearing, documenting repeatedly how the Plaintiff's subjective complaints were contradicted by the objective medical evidence from his providers.

First, the ALJ made the point that despite alleging he was disabled as of March 2020, Plaintiff did not seek treatment for his impairments, primarily his leg vein issues, until October 2020. A.R. 24. The ALJ then highlighted other objective medical evidence from Plaintiff's records which contradicted his subjective complaints, especially as to Plaintiff's complaints of vein-related leg pain; treatment was noted as "conservative" throughout 2021 and 2022, and Plaintiff was not "fully compliant with his course of treatment" including use of compression stockings and cessation of smoking approximately two packs of cigarettes a day. A.R. 24-25. As of December 2022, Plaintiff's vein clinician's stated Plaintiff's "treatment was concluded and that he" only needed to follow up "as needed," and the ALJ made the point that Plaintiff did not follow up again. A.R. 25. Similarly, at a 2023 primary care appointment, Plaintiff's doctor found his "strength five out of five, his deep tendon reflexes were appropriate, and his gait normal." A.R. 25. X-ray imaging from mid-2023, confirmed Plaintiff had bilateral foot osteoarthritis and Plaintiff was given an injection. *Id.* The doctor nonetheless referred Plaintiff for an electromyography which revealed "no Nerve Conduction Study (NCS) abnormalities." *Id.* Later in 2023, at an emergency room visit, the Plaintiff's legs were not edematous. The ALJ thus specifically linked

the RFC's limitation of "a reduced range of sedentary work with sit/stand options to account for his claims of lower extremely pain and edema." A.R. 25.

When reviewing the medical opinion evidence, the ALJ noted that "no treating clinician placed restrictions on limitations on [Plaintiff's] functionality." A.R. 26. The ALJ further reviewed the opinions of the state agency medical consultants who opined that Plaintiff could perform "a limited range of light work." *Id.* at 26. The ALJ found these opinions to be partially persuasive, but the ALJ found Plaintiff should be more limited to only sedentary work "based upon the recent osteoarthritic issues." *Id.* "In sum, although the claimant's impairments are severe, they do not preclude him from completing basic work related activities." *Id.* at 26.

At step four, the ALJ concluded that Plaintiff could not perform his past relevant work as either a welder or laborer, as both were performed at a "heavy" exertion level which was beyond Plaintiff's RFC. A.R. 26. The ALJ then looked to the testimony of the Vocational Expert to determine whether there were sufficient jobs in the national economy that an individual with Plaintiff's RFC could perform. *Id.* at 27. The Vocational Expert testified that an individual with Plaintiff's RFC could perform the representative jobs of order clerk, document preparer, and surveillance system monitor, all of which were sedentary and within Plaintiff's RFC. *Id.* Accordingly, at step five, Plaintiff was found not to be disabled and the application for benefits was denied. *Id.*

## Discussion

The Social Security Act authorizes judicial review of a final decision of the agency and states that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). A court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). "The threshold for this standard 'is not high.'" *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020) (quoting *Biestek* 587 U.S. at 103). "Substantial evidence in this context means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting marks omitted). Thus "even where reasonable minds might disagree about the outcome," so long as the ALJ followed the correct legal standards and their decision is supported by substantial evidence, the Court will not reverse. *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023); *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (a reviewing court's role is limited to determining whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence.").

Given this deferential level of review, the Court considers the administrative record as a whole, but it does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for

that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). An ALJ must articulate their analysis of the evidence in such a way to allow the reviewing court to trace the path of their reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2019) (citations omitted). But "[a]n ALJ need not specifically address every piece of evidence." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). Remand is appropriate only "when it is unclear if the ALJ examined the full range of medical evidence, or if the court cannot trace the ALJ's path of reasoning." *Wolford v. Kijakazi*, 658 F. Supp. 3d 664, 668 (N.D. Ind. 2023) (cleaned up).

On appeal, Plaintiff makes two distinct arguments as to why he believes the ALJ erred in the written decision. First, Plaintiff argues that the ALJ's own evaluation of his X-ray imaging results instead of seeking additional expert analysis. Second, Plaintiff argues the ALJ failed to adequately consider opinions from two medical providers relating to Plaintiff's vein issues. Plaintiff says both arguments require reversal of the ALJ's decision, but the Court disagrees.

### A. Whether the ALJ "Played Doctor" by Conducting His Own Medical Review of Plaintiff's X-ray Imaging Results

Plaintiff's first argument is that the ALJ "committed reversible error in failing to subject complex medical imaging, the etiology of which was characterized as 'severe

arthritis' to the subtalar joints and high arches of the bilateral feet and promoted new treatment measures of steroid injection and custom-made orthotics, to medical expert scrutiny." DE 13 at 8. Specifically, Plaintiff notes that his most recent X-ray images were from January 2024; but the last time any state agency reviewing physician reviewed Plaintiff's records was July 18, 2023. *Id.* at 8, n.1. Recall, Plaintiff's hearing was in August 2023, or several months before these x-rays were taken. Plaintiff thus seeks to analogize himself to the claimant in *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) where the Seventh Circuit reversed an ALJ's decision based on MRI results which had not been subject to expert review because they were "new and potentially decisive" as to whether the claimant met a particular listing.

The primary problem with Plaintiff's argument is that it distorts the medical records at issue and the ALJ's written decision addressing the records. The written decision does not reflect the ALJ "playing doctor" or interpreting the X-rays himself to come to his own medical conclusions about Plaintiff's impairments. Nor can it accurately be said that the 2024 X-rays contained any "new and potentially decisive" evidence which would warrant any additional RFC limitations, let alone a finding of disability. Plaintiff simply speculates that treatment which post-dates the hearing would have changed the results. Speculation is not sufficient to warrant remand. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). "It is not enough to criticize the ALJ's decision about her functional capacity to work." *Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024). Instead, a claimant "must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the

record." *Id.* "There is no error when there is 'no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.'" *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)).

### B. Whether the ALJ Adequately Considered Evidence from Plaintiff's Medical Providers

Plaintiff next argues that the ALJ "fail[ed] to even acknowledge the opinion of Nurse Practitioner Selena Velasco and her supervising vein specialist, Dr. Keerthi Prasad, that Plaintiff needed to elevate his bilateral legs due to chronic veinous insufficiency." DE 13 at 13. This argument is without merit. As the Commissioner convincingly responds, Plaintiff's argument is premised on a faulty reading of the underlying record and ignores portions of the ALJ's written decision.

While it is true that Plaintiff was told to elevate his legs as part of his "conservative treatment" for his leg pain, these comments were not made in the context of what Plaintiff could or could not do in terms of functional capacity. Treatment recommendations are not medical opinion evidence about a claimant's abilities, but instead "other medical evidence". *See* 20 C.F.R. § 404.1513(a)(3). None of Plaintiff's medical providers or the state agency physicians who reviewed his records found that Plaintiff needed to elevate his legs as part of his functional limitations. On top of that, the ALJ's written decision makes clear that the ALJ considered the very evidence that Plaintiff says was overlooked. *See* A.R. 24-25 (discussing the treatment recommendations from Velasco). Thus there was no error.

## Conclusion

For the reasons discussed, the Commissioner's decision is **AFFIRMED**, and the Clerk of Court is **DIRECTED** to enter judgment for the Defendant Commissioner of Social Security.

SO ORDERED this 24th day of August 2026.

/s/ *Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT